Nathaniel Treat *versus* The Inhabitants of Orono.

The law presumes, that official persons conduct legally and perform their duties, until proof is made to the contrary. And this principle applies to the acts of highway surveyors.

Where a surveyor of highways has made a return to the assessors of a deficiency in working out, or otherwise paying highway taxes, and they have assessed the amount in the next town tax, such assessment cannot be shown to be illegal and void, by proof of payment to the surveyor. The remedy of the aggrieved party is in a different manner.

Where a person claims to recover back money paid as the consideration for a deed of land sold to pay the taxes thereon, the burden of proof is on him to show a failure of consideration, and he must prove every fact necessary to make out his position, that the sale was void; although when a person attempts to establish a title by proof of an assessment and sale, the burden of proof is on him who would set up such title.

Ordinarily a collector of taxes, on making sale of land to obtain payment of the taxes thereon, inserts covenants in his deed respecting the regularity of his proceedings, but none respecting the title. The purchaser pays his money for such conveyance; the only security he expects to obtain is by his deed; and he cannot, without proof of some fraudulent representation or concealment, recover back the consideration. And in such case, it can only be recovered of a party to the fraud.

If a collector's sale of land to obtain payment of taxes is made under such circumstances, that no valid title passes to the purchaser, and this purchaser conveys the premises to another by quitclaim deed, there can be no recovery back of the purchase money by the last purchaser of his grantor on the ground of a failure of consideration, without proof of a total failure.

And if the last purchaser has entered into possession of the premises by virtue of his deed, and has received rents and profits therefrom, or has never been dispossessed or evicted, or has otherwise received benefit, by obtaining payment of those taxes, or by obtaining the title at a very reduced valuation, on account of the existence of his apparent title, he cannot recover back the consideration paid.

At the trial before Tenney J. nearly twenty witnesses were examined, and several depositions, deeds, agreements, receipts,

notices and records were read ; and after all the evidence had been introduced, on each side, the parties agreed, that the whole Court should upon that evidence, so far as the same is legally admissible or not objected to, render such judgment as the law applicable thereto should require ; and that the Court might infer any facts, that a jury would be authorized to infer.

The case was argued, both as to the facts and the law, by

*Kent* and *Washburn,* for the plaintiff — and by

*J. Appleton* and *Wilson,* for the defendants.

One position taken by Washburn in his opening was this : —

In the common case of a deed of release, and no title, we admit, the consideration money cannot be recovered back. It has been so decided in *Soper* v. *Stevens,* 14 Maine R. 133 ; and in *Joyce* v. *Ryan,* 4 Greenl. 101. But where the parties acted under a mistake as to the facts, or where the title failed through want of form, or want of authority in the grantor to pass what he intended and designed to pass, so that what title there was remained as before, then the money paid as the consideration may be recovered back. *Joy* v. *Oxford,* 3 Greenl. 134 ; *Shearer* v. *Fowler,* 7 Mass. R. 31 ; *Williams* v. *Reed,* 5 Pick. 480 ; *Claflin* v. *Godfrey,* 21 Pick. 1 ; *Lazell* v. *Miller,* 15 Mass. R. 207 ; 3 Mass. R. 74 ; 17 Mass. R. 380 ; 3 Pick. 261 ; 4 Pick. 228 ; *Norton* v. *Marden,* 3 Shepl. 45 ; *Haven* v. *Foster,* 9 Pick. 112.

*For the defendants* were cited *Hill* v. *Hobart,* 16 Maine R. 164 ; *Emerson* v. *Washington,* 9 Greenl. 94 ; 2 Kent, 379 ; *Gerrish* v. *Gardiner,* 23 Maine R. 46 ; 22 Pick. 18 ; 21 Maine R. 124 ; 16 Maine R. 281 ; 4 Greenl. 101 ; 14 Maine R. 133 ; 9 Greenl. 128 ; 9 Cowen, 674 ; 5 East, 449 ; 2 Shepl. 364 ; Chitty on Cont. 653.

The view of the facts taken by the Court appears in the opinion drawn up, as follows, by

SHEPLEY J. — The claims of the plaintiff arise from different sources and transactions, and they must be separately considered.

He first claims to recover the amount of a promissory note, made on July 20, 1837, payable to the town for $110,67. It was paid by the plaintiff to the town treasurer, on June 27, 1838.

It appears, that certain real estate was assessed in that town, in the year 1835, to Samuel Veazie. That an item of $98,87, for a deficiency of a highway tax, made in the year 1834, composed a part of that assessment. That Samuel Page, a collector of taxes in that town for the year 1835, advertised and sold to the plaintiff, on April 21, 1837, the estate so assessed to collect a balance of taxes then remaining unpaid, and received therefor by order of the selectmen, on July 20, 1837, the above named note ; and on that day made a conveyance of the estate to the plaintiff. Veazie testifies, that he had caused the highway taxes, assessed on his estate for the year, 1834, to be paid in labor upon the highways during that year.

The plaintiff alleges, that he obtained no title by that conveyance ; and that he is entitled to recover back the amount of the consideration paid for it. It was provided by statute, 1821, c. 118, § 13, that the surveyor of highways shall, at the expiration of his term, render to the assessors a list of such persons, as shall have been deficient in working out or otherwise paying their highway taxes. And that the assessors should put the deficient sums in a distinct column in the next assessment for the town tax to be collected, as other taxes were. There is no proof in this case, that the surveyor of highways, to whom the tax was committed for collection, made such a return to the assessors, upon which their assessment of a deficiency was founded. The law presumes, that official persons conduct legally and perform their duties, until proof is made to the contrary. When a surveyor has made return of a deficiency to the assessors, and they have assessed the amount in the next town tax, such assessment cannot be shown to be illegal and void by proof of payment to the surveyor. The remedy of the aggrieved party would be an application to the assessors for an abatement, where such proof should avail him, or a suit against the surveyor to recover for the injury occasion-

ed by his false return. The burden of proof is upon the plaintiff to show a failure of consideration, and he must prove every fact necessary to make out his position, that the sale was void. When a person claims to recover back money paid, the burden of proof is not upon the same party, as it is, when a person attempts to establish a title by proof of an assessment and sale. Ordinarily the collector of taxes receives the money and the town is not a party to the transaction, and his deed conveying property sold usually contains covenants respecting the regularity of his proceedings, but no covenants respecting the title. The purchaser pays his money for such a conveyance, which is the only security, which he expects to obtain ; and he cannot, without proof of some fraudulent representation or concealment, recover back the consideration paid. *Emerson* v. *The County of Washington,* 9 Greenl. 88 ; *Sawyer* v. *Vaughan,* 25 Maine R. 337. And in such case it could only be recovered from a party to the fraud. In this case the town became so far connected with the sale as to receive the plaintiff's note to itself instead of cash from the collector. But it could not have been the expectation of either party, that it was thereby to assume a responsibility, which otherwise would not have existed. To allow a person to purchase at such a sale, as he often may, a valuable estate for a trifling sum, and to take a deed from the collector without covenants of title, and to become the absolute owner of the estate, if the title thus acquired, should prove to be good, and if not good, to recover back the consideration paid, with interest, and thus to derive all possible advantage from the contingency, without being subjected in any event to a loss, would present a case anomalous as a business transaction, showing that it could not have been the intention of the parties. In this case there is no evidence, that the title has been decided to be invalid, or that he has been evicted ; and he is not entitled to recover for this item of his claim.

His next claim is to recover a part of the sum of $669,73, paid to the town as the consideration of a conveyance made by the selectmen to him, on August 24, 1838. It appears,

that twenty-two saw mills and privileges, eight lath machines under them, and one hundred and sixty acres of land, formerly owned by William and Jeremiah Coburn, Elihu Baxter and others, with the buildings thereon, were assessed, in the year 1837, to the Bangor Lower Stillwater Mill Company. That the plaintiff was the acting agent of that company, from July, 1836, to the year 1839, that John B. Smith, a collector of taxes for the year 1837, advertised and sold these estates, to collect the taxes assessed upon them, on May 7, 1838, to John Hutchins, Jr. for the sum of $629,54, being the amount of the taxes and charges of sale. That Hutchins, as first select-man, was authorized by a vote of the town " to bid off for the benefit of the town, non-resident lands advertised to be sold for taxes, provided no other person or persons shall appear at the time and place of sale, to bid off the same." The town at its meeting on April 30, 1838, having authorized the selectmen to hire a large sum of money on the credit of the town to pay outstanding orders, they made an arrangement with the plain-tiff, by which they obtained a discharge of certain claims against the town and money to pay other debts and expenses, as the consideration of a conveyance made by them to him, of the estates purchased by Hutchins as agent, and conveyed by the collector to the town, the deed of conveyance was signed by them as selectmen. It was a deed of release, and contain-ed no covenants but the following ; " we do covenant with the said Treat, his heirs and assigns, that we will warrant and forever defend the premises to him the said Treat, his heirs and assigns, forever, against the lawful claims and demands of all persons claiming by, through or under us."

The town received the benefit of that conveyance, and has never repudiated the transaction ; or claimed any title in the premises since that conveyance. If the collector's sale and conveyance did not affect the title, the plaintiff being then agent of the company, might perhaps have been considered as extinguishing any pretence of title by a payment of the taxes for the benefit of the company, had the company claimed to consider him as acting for its benefit. The sale and convey-

ance of the collector may be considered as inoperative by reason of its having been made in such a manner and without, so far as it appears, receiving any thing in payment. If the plaintiff however has entered into possession of the premises by virtue of his conveyance from the selectmen and has received rents and profits from them, or has never been dispossessed or evicted, or has otherwise received benefit by obtaining payment of those taxes, or by obtaining the title at a very reduced valuation on account of the existence of his apparent title, he cannot recover back the consideration. For it is obvious, that money paid for a conveyance of lands containing such covenants, cannot be considered as paid without consideration; and there can be no recovery on the ground of a failure of consideration without proof of a total failure. It becomes necessary to inquire, whether the plaintiff has derived benefits from the conveyance made by the selectmen to him. There appears to have been two blocks of saw mills, one containing sixteen, and the other six saws. Gershom B. Weston and others, trustees of the company, conveyed to the plaintiff, on October 14, 1837, saw No. 7 and half of the lath machine under Nos. 7 and 8; and that property may be considered as freed from the supposed incumbrance of a tax title. William G. Bent states, that the plaintiff since his purchase has occupied all but four in the block of sixteen saws. Myrick Emerson states, that the plaintiff since that time has occupied all those saws, that have been in operation except the first four, which belonged to Cooper; and that he sold two of the mills to Strickland and others, which were taken down. Edmund Kimball states, that the plaintiff claimed saw No. 5, in that block, by tax titles, which he considered to be worthless, and that he sold it to the plaintiff, in the year 1841, for $500, and cheaper than he would have done, had it not been for the tax, because he did not want trouble. It appears from the testimony of John B. Hill and Jabez True, that the Newbury Bank owned four in the block, of six saws; and offered to allow the plaintiff to retain two of them to extinguish his tax titles, or to take $1000, for its whole title,

and that the plaintiff paid the $1000 and received a conveyance from the Bank, of the four saws, on April 17, 1841.

The trustees of the company, appear to have made a conveyance of the property, on October 16, 1837, to John Daggett, Alden Weston, and Ebenezer Harlow. And Daggett, G. B. Weston and Harlow, made a contract in writing with the plaintiff, under date of October 1, 1840, which after reciting, that the plaintiff had claims upon the company to the amount of $1900,85, "as also certain other claims for taxes, which ought to have been paid by said company and amounting to the sum of $973,58;" and that he had been paid towards the first named sum, $1006,34, contains this clause. " He, said Treat, hereby fully releases and discharges said Daggett, Weston, Harlow and John M. Mayo, who was formerly a trustee in said Bangor Lower Stillwater Mill Company, from any and every liability of every description on account of said taxes." And it appears from the testimony of Bent and Emerson, that the plaintiff admitted, that it was part of an arrangement between himself and Daggett, Weston and Harlow, by which he became the purchaser of their rights in that property by being allowed his claims, including the taxes, in part payment therefor. They conveyed to him on the same day their interest in that property computed to be ten hundred and ninety-five twelve hundredth parts. It appears therefore, that the plaintiff has claimed and received, by virtue of the conveyance made by the selectmen to him, benefits to a large amount by rents and profits derived from the property, and by the purchase of a large portion of it by having those taxes allowed in part payment, or by purchasing at a reduced price on account of that supposed incumbrance upon the title. And it does not appear, that he has surrendered, or been evicted of any portion of the property included in that conveyance, without having received payment of the taxes, excepting the four saws relinquished to Cooper. There is not only no pretence for the claim on the ground of a total failure of the consideration, but there is reason to believe, that the purchase has proved to have been an advantageous one.

He also claims to recover back a small part of the sum of $620, being the consideration paid for a conveyance of certain other estates made by the selectmen of the town, on Nov. 17, 1838. The same collector had sold these estates for the collection of taxes assessed upon them, and conveyed them in like manner to the town. The claim is to recover the amount of the taxes on the lot and store built by Bakeman, being $8,82, and on the Longfellow boom, being $6,00 and one half of the amount on the Averill boom, being $8,68. It is not therefore contended, that there has been a failure of consideration but to a small extent. Most of the remarks respecting the last item apply with equal or greater force to the present.

The remaining item claimed is for taxes assessed upon the property since the conveyance of it to the plaintiff and paid by him; and this item falls of course on failure to recover for the others.

*Plaintiff nonsuit.*